EDISON TRAVEL, INC., Respondent, *v.* AMERICAN AIRLINES, INC., et al., Appellants.

First Department, December 13, 1973.

*Harold L. Warner, Jr.,* of counsel (*John N. Romans* and *Bernard J. Rosenthal* with him on the brief; *Chadbourne, Parke, Whiteside & Wolff,* attorneys), for appellants.

*Anthony LoFrisco* of counsel (*LoFrisco & Gallagher,* attorneys), for respondent.

TILZER, J. The petitioner is a travel agent and is currently on the approved agency list of the Air Traffic Conference of

America (ATC), a division of a trade association formed by the respondent airlines. It appears that in January, 1972, petitioner's premises were burglarized — a 2,000-pound safe containing 1,200 airline tickets being physically removed from the premises. Pursuant to the agency agreement between the parties, the petitioner was required to hold the airline harmless from any loss resulting from the theft. However, the agreement provided that the agent could be relieved of liability upon a determination by the executive secretary of the ATC that the agent " at the time of theft, exercised reasonable care for the protection of such airline ticket stock." (Passenger sales agency agreement, par. 18.) Reasonable care was defined to include " compliance with such minimum safeguards as may be published from time to time by the Executive Secretary." The minimum safeguards, which were in fact published, provided that " all tickets * * * other than a two-day working supply, shall be maintained in a bank safety deposit box or equivalent off-premises security facility." However, where it was impossible or impracticable to obtain off-premises facilities, the agent was permitted to maintain the entire ticket supply on premises in a safe weighing " at least 400 pounds * * * and * * * secured or bolted to preclude movement within or quick removal from the premises." (Air traffic conference travel agents handbook — Minimum safeguards to protect air line ticket stock, etc.)

Subsequent to the theft a determination was made that petitioner did not comply with the minimum safeguards and accordingly would be held responsible for any tickets actually used. Additionally, respondent Northeast Airlines demanded payment of the sum of $1,700 representing the value of stolen tickets actually used. Petitioner thereupon brought this proceeding pursuant to article 78 seeking in effect to prohibit the respondents from taking any further steps, based on the January 1972 theft, which would result in the termination of petitioner's agency status. Additionally petitioner, among other things, sought declaratory relief to the effect that it had complied with paragraph 18 of the agency agreement and was not responsible for any losses sustained by the airlines. Special Term, without any hearing, found that respondents had acted arbitrarily and further that the airlines accepted the tickets under such circumstances that they could have detected that such tickets were stolen and therefore, in effect, the airlines were themselves responsible for the losses they incurred. Accordingly, the determination of the executive secretary was annulled and it was declared that petitioner was not liable for any of the losses.

At the outset we note, that under the circumstances of this case it was improper to grant the petition prior to affording respondents an opportunity to interpose an answer (CPLR 7804, subd. [f]; cf. *Matter of Sibarco Stations* v. *Risman,* 34 A D 2d 890). Although a formal motion to dismiss was not made, the affidavit in opposition to the petition specifically urged that the petition was improper as a matter of law and should be dismissed. And such affidavit clearly established the presence of triable issues. It was undisputed that at the time of the loss the entire ticket supply was kept in an on-premises safe, which was neither secured nor bolted. Whether the petitioner could have obtained off-premises security facilities, whether the use of a 2,000 pound safe obviated the necessity of it being bolted, and whether the respondents could or should have taken steps to detect and prevent the use of the stolen tickets, raised issues which should not have been summarily decided.

Of greater significance, however, is that it appears that the petition should have been dismissed as premature. While an initial determination had been made that petitioner would be held responsible for any tickets actually used, nevertheless it does not appear that the respondents have taken steps to enforce whatever rights they may have against petitioner. At Special Term respondents specifically stated that they would only proceed in either of the two following ways: (1) " A simple action for money allegedly due under the Sales Agency Agreement "; or (2) " The Airlines may refer the matter to the Agency Committee of the Air Traffic Conference of America " to review petitioner's agency status. Thus respondents contemplate remedies which they have the absolute right to seek. And the petitioner, may not through the device of an article 78 proceeding (assuming that under proper circumstances respondents are subject to article 78) prevent respondents from enforcing rights emanating from purely private contractual matters (*People ex rel. Richards* v. *Hylan,* 200 App. Div. 871; *Matter of Atlantic & Western Travel* v. *New York Tel. Co.,* 40 Misc 2d 950; *Regalady Lingerie Corp.* v. *524 Broadway Corp.,* 82 N. Y. S. 2d 353; cf. *Matter of Walsh* v. *LaGuardia,* 269 N. Y. 437). Moreover, not only is reference of the matter to the agency committee specifically authorized by the conference agency resolution (Agency resolution, § IV, par. I; Agency agreement, par. 26), but any determination made by the committee is subject to *de novo* review in arbitration. (Agency agreement, par. 27.) Consequently, it does not appear that petitioner has been subjected to a final determination affecting its rights as agent for the respondents and accordingly article 78 relief is inappro-

priate (CPLR 7801; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7801.06). Similarly, further proceedings being required pursuant to the contract, declaratory relief would also be improper (see 3 Weinstein-Korn-Miller, par. 3001.09 *et seq.*). In any event, it is to be noted that petitioner has not been threatened with nor subjected to irreparable harm since respondents have taken the position that '' during the arbitration proceeding and until and unless an adverse determination was rendered against it, Edison would continue to conduct its business in regular course.''

Finally, we note that in a related appeal (*Dewald Travel Int. Sports Servs.* v. *Air West,* 42 A D 2d .946), where the agency committee had already acted and terminated the agent's status, this court affirmed a judgment directing that the airlines and petitioners there involved proceed to arbitration. Of course, in the case *sub judice,* we have not reached that point in the proceedings where the issue of whether the matter is to proceed to arbitration is properly before the court since, as indicated, respondents have not taken steps to enforce their rights through the agency committee. Accordingly, petitioner may, after respondents determine which course of conduct will be followed, and upon a final determination if the matter is referred to the agency committee, apply at Special Term for leave to replead, subject to whatever rights respondents have in respect to arbitration.

Accordingly, the judgment entered January 8, 1973, granting the petition should be reversed on the law and the petition dismissed with costs and disbursements, with leave to seek permission at Special Term to replead at the appropriate time if petitioner is so advised.

STEVENS, P. J., McGIVERN, MARKEWICH and NUNEZ, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 8, 1973, unanimously reversed, on the law, and vacated, and the petition dismissed, with leave to seek permission at Special Term to replead at the appropriate time if petitioner is so advised. Appellants shall recover of respondent $60 costs and disbursements of this appeal.